UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NICHOLAS CALABRESE, *et al.* | No. 02 CR 1050<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

On September 26, 2007, Proposed Intervenor Chicago Tribune Company ("Tribune" or "Intervenor") moved—on an emergency basis—to intervene[1] and for immediate access to the jurors' names upon the return of a verdict. That day, I held a hearing on Tribune's motion. None of the defendants in the case took a position, but the Government opposed the motion, citing three main objections. First, the Government argued that disclosing the jurors' names could endanger their physical safety. Second, the Government asserted that to release the jurors' names now would be to renege on the promise of anonymity made to them at the outset of their service. Finally, the Government expressed concern that the only purpose of releasing the names at this point would be to inquire about the nature of the deliberations.

The day after Tribune filed its motion, the jury returned its verdict.[2] That day, I issued an Order stating that to the extent Tribune sought the jurors' names on an emergency basis—i.e., *immediately* upon the return of the verdict—its motion was denied. I entered the original Order

---

[1]Tribune's motion to intervene is granted. *See In re Associated Press*, 162 F.3d 503, 508 (7th Cir. 1998) ("[T]he press [should be] permitted to intervene in order to present arguments against limitations to the constitutional or common law right of access.").

[2]The jury was deliberating on the second phase of the trial. The deliberations were regarding whether the Government had proven the murder allegations charged as part of the racketeering conspiracy. The jury reached a unanimous decision regarding ten of the murders charged, but deadlocked as to the remaining eight.

granting the Government's motion for an anonymous jury in April. Therefore, Intervenor had more than five months to file its motion. I denied the emergency nature of the motion because I concluded that Tribune's request—and the Government's opposition thereto—required more reasoned consideration. However, I stated that I would still consider the request on a highly expedited basis. And now, eight days after first hearing Intervenor's motion, I enter this ruling.

The Supreme Court has declared that "the press and general public have a constitutional right of access to criminal trials." *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 603 (1982); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (plurality opinion). This right, however, is not absolute. The Court has held that the right of access "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. 39, 45 (1984).

The starting point for assessing whether Intervenor is entitled to the relief it seeks is to examine whether Tribune has a qualified First Amendment right of access to the jurors' names. In general, I would analyze that question using the two-pronged test the Supreme Court laid out in *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8 (1986). This involves the "experience" test and the "logic" test. *See United States v. Black*, 483 F.Supp.2d 618, 622-30 (N.D.Ill. 2007). I am not convinced that Tribune has carried its burden of establishing a qualified right of access to this information. *See Black*, 483 F.Supp.2d at 630; *Gannet Co., Inc. v. State*, 571 A.2d 735 (Del. 1989) (holding that there is no First Amendment right of public access to jurors' names). In particular, Tribune's claim of a historical underpinning to a First Amendment right of access is belied by the fact that the federal statute requiring courts to develop a master plan for random jury selection explicitly permits courts to adopt a plan that does not reveal

prospective juror names at all. 28 U.S.C. § 1863(b)(7).[3] Nevertheless, for purposes here, I will assume—without deciding—that some qualified First Amendment right of access does exist.

It is well established that in certain circumstances, a trial court may decline to release jurors' names, even after the trial has concluded. *See United States v. Brown*, 250 F.3d 907, 922 (5th Cir. 2001) (affirming the district court's post-verdict order maintaining juror confidentiality); *In re Globe Newspaper Co.*, 920 F.2d 88, 91 (1st Cir. 1990) ("[T]here could be circumstances necessitating withholding juror identities after verdict . . . ."); *United States v. Harrelson*, 713 F.2d 1114 (5th Cir. 1983); *In re Disclosure of Juror Names and Addresses*, 592 N.W.2d 798, 808 (Mich. Ct. App. 1999) ("[W]e hold that the trial court retains the discretion to formulate restrictions on the time and manner of disclosure of jurors' names or, in some cases, perhaps, deny disclosure . . . .").

It is true—and Intervenor correctly points out—that the *Globe Newspaper* court directed the district court to turn over the jurors' names and addresses to the intervenor newspaper. 920 F.2d at 91. However, the specific outcome of that case notwithstanding, *Globe Newspaper* nevertheless supports the proposition that withholding jurors' names is appropriate in some circumstances. The issue here is not whether a broad rule should be established categorically banning the press from accessing jurors' names in all cases. The question, rather, is whether in

---

[3]This Court's master plan states: "No person shall make public or disclose to any person, unless so ordered by a judge of this Court, the names drawn from the Qualified Jury Wheel to serve in this Court until the first day of the jurors' term of service. *Any judge of this Court may order that the names of jurors involved in a trial presided over by that judge remain confidential if the interests of justice so require*." United States District Court, Northern District of Illinois, Plan for Random Selection of Jurors (As revised December 2006), ¶ 10(a) (emphasis added). As I explain more fully below, I conclude that the interests of justice require the jurors' names to remain confidential here.

the narrow context of *this* case, the circumstances favor withholding that information. The *Globe Newspaper* court premised its ruling on the fact that the trial court did not make specific findings to support the determination that the interests of justice required the post-verdict withholding of jurors' names. *Id.* at 92-93.[4] Thus, to the extent that I find that the interests of justice here require denying Tribune's request, *Globe Newspaper* poses no barrier.

The interests of justice are best served by maintaining the anonymity of the jurors. Tribune relies primarily—though by no means exclusively—on the *Globe Newspaper* case. However, the language in the *Globe Newspaper* opinion actually counsels in favor of withholding the jurors' names here. First, the panel in *Globe Newspaper* held that it would be appropriate to withhold jurors' names "when there is some special risk of personal harm to the jurors." 920 F.2d at 91. Releasing the jurors' names here could pose just such risks to these jurors. A great deal of evidence was adduced at trial establishing that these defendants—and the criminal organization to which they belong—would go to great lengths to obstruct the judicial process. In fact, this very jury just found that one of the defendants committed a homicide, the motive for which was to prevent the victim from providing damaging testimony about the perpetrator. The risk that associates of these defendants would seek to retaliate against this jury is real. The *Brown* court noted that "[t]hreats of intimidation and harassment do not necessarily end with the conclusion of trial . . . without continuing anonymity, jurors would remain vulnerable to abuse by those acting for the defendants." 250 F.3d at 921-22. The same is true of the jurors here. In addition, it is entirely conceivable that criminal associates of these defendants who fear that they may face trial

---

[4]Like the *Globe Newspaper* court, the Third Circuit, in *United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994), also reversed a trial court's decision to impose restrictions on the media's access to juror information post-verdict. But also like in *Globe Newspaper*, the *Antar* court suggested that, in certain circumstances, such an order could be appropriate.

at some point in the future could threaten these jurors in an effort to intimidate future jurors.[5] The risk that releasing the jurors' names could subject them to physical harm is, in and of itself, enough to warrant denial of Tribune's request.

The *Globe Newspaper* case supports the result here in other ways as well. Tribune cites the same passage in both its opening and its supplemental briefs:

> Jurors, after all, are citizen soldiers; unlike judges and court personnel, they are not full-time professionals. At first glance it will seem unfair that, in addition to giving of their time and talent, they may, in publicized cases, be forced to run a press gauntlet and have their identities exposed to a public which they might fear will contain a few vengeful or unbalanced persons. But there are several answers to this: first, jurors may avoid many problems by flatly refusing press interviews when approached. Second, while privacy concerns following a publicized trial are real—and may understandably include some nervousness about personal security—these unfocused fears must be balanced against the loss of public confidence in our justice system that could arise if criminal juries very often consisted of anonymous persons. While anonymity is acceptable in the exceptional case where there is a particular need for it, the prospect of criminal justice being routinely meted out by unknown persons does not comport with democratic values of accountability and openness. Jurors may be citizen soldiers, but they are soldiers nonetheless, and like soldiers of any sort, they may be asked to perform distasteful duties. Their participation in publicized trials may sometimes force them into the limelight against their wishes. We cannot accept the mere generalized privacy concerns of jurors, no matter how sincerely felt, as a sufficient reason for withholding their identities under the interests-of-justice standard.

*Globe Newspaper*, 920 F.2d at 97-98.

Although relied upon by Tribune, this passage effectively illustrates why the jurors' names should be withheld here. First, the court states that "jurors may avoid many problems by flatly refusing press interviews when approached." *Id*. at 97. This observation may have been true in 1990 when the *Globe Newspaper* case was decided, but it is patently untrue today. Even if

---

[5]Taken to its logical extreme, one could use this principle to argue that all jurors should remain anonymous in all cases. I reject such an extension. As I explain below, this case is an outlier. The fact that it is both highly publicized and involves dangerous individuals makes even post-verdict anonymity important.

a juror declines to be interviewed, the news media can nonetheless force that reluctant juror into the spotlight. The recent trial in this building of *United States v. Warner, et al.*, 02 CR 506, demonstrates this point. In that case, a newspaper owned by Intervenor gathered and published a great deal of information about the jurors, without actually having to interview the jurors. The events in that case illustrate that the news media can, and unhesitatingly will, investigate jurors' lives without necessarily ever speaking to the juror. The media may examine all aspects of a juror's background and could, in theory, even wait outside a juror's home to take photographs or request interviews. Today, even a photograph or video of a juror declining an interview or evading a reporter is newsworthy. This is so despite the fact that some might fail to see how it advances the public's understanding of how well our courts do the government's business. The *Globe Newspaper* panel likely envisioned a more-or-less polite request from the media seeking comment, followed by a similarly polite media retreat in the face of a flat "no." It is unlikely that this would be the court's vision now. This both strengthens juror preference as a reason to continue anonymity and poses another potential "harm" (besides physical harm) that could befall jurors if their identities are released.

      The passage Tribune cites supports the result here in another way as well. The court stated: "While anonymity is acceptable in the exceptional case where there is a particular need for it, the prospect of criminal justice being routinely meted out by unknown persons does not comport with democratic values of accountability and openness." *Globe Newspaper*, 920 F.2d at 97-98. This is the "exceptional" case. Reading Tribune's motion, one might think that we are on the precipice, perilously close to holding all criminal trials in a secluded room, wholly outside the public's view. That is, quite clearly, not so. First, this case is anomalous. I have presided over criminal trials on this Court for more than two decades, yet this is only the second time that I have

seated an anonymous jury. Here, there was an unusual combination of dangerous individuals and dense media coverage focused on popular notions of organized crime, its allegedly colorful leaders, and its allegedly colorful ways. It was this mixture that compelled me to take the extraordinary step of seating an anonymous jury. Second, this trial has been remarkably open. Reporters were present throughout all phases of the trial, including voir dire. Also, to the extent that some matters were heard at sidebar, outside the presence of reporters, nearly all of those transcripts are set to be released now that a verdict has been reached. Moreover, in response to an early request by Tribune, I ordered the Government to release a redacted version of its *Santiago* proffer. As a result, the media was able to see evidence before it was ever offered and before determinations were made as to its admissibility. In short, the news media thoroughly covered this trial from start to finish. It is simply wrong to suggest that withholding the jurors' names somehow deprives the public of meaningful access to these proceedings or threatens to undermine the public's confidence in the criminal justice system.

Another factor supporting continued anonymity is the fact that efforts have been made to accommodate both the media's desire to gather news and the jurors' interest in remaining anonymous. Immediately after the jury concluded its deliberations, courthouse personnel set aside a room where the news media could interview any juror who wished to speak. Also, when I addressed the jury to thank the members for their service, I informed them that the media wished to speak to them, that this room was being set up to accommodate such a meeting, and that any juror who wished to speak to the press had an absolute right to do so.[6] I further informed the jurors

---

[6] The Michigan Court of Appeals specifically endorsed the method I employed here. The trial court in that case made similar arrangements, and the appeals court called it "an example of a reasonable compromise trial courts can employ once it has been determined that jurors' names should be sealed to protect their safety." *In re Disclosure of Juror Names*, 592 N.W.2d at 808

7

that should they opt not to talk to the press then, that they remained free to speak to the media later if they changed their minds. No juror chose to be interviewed in the room that was set aside, and to my knowledge, no juror has contacted the press since.[7] The import of all this is that the *Globe Newspaper* court—by stating jurors could simply avoid problems by refusing press interviews—suggested that the district court's order in that case was infirm, at least in part, because it wholly deprived the media of an opportunity to interview the jurors. That is not the case here. Efforts were made to ensure that the media would have access to any juror who acquiesced to an interview. The fact that the jurors have already expressed such fervent reluctance to speak to the media, *see supra* note 7, strengthens my resolve that continued anonymity is appropriate. To be clear, my ruling does not *mandate* anonymity, it merely permits it. *See Brown*, 250 F.3d at 920 n.20.

Finally, releasing the jurors' names now would undermine the ability of judges in the future to use anonymous juries to ensure fair trials. Seating an anonymous jury is a powerful arrow in a district court's quiver. It can be used, in extreme circumstances, to create an environment wherein jurors can deliberate without fear of outside influences. *See U.S. v. Mansoori*, 304 F.3d 635, 650 (7th Cir. 2002) ("Empaneling an anonymous jury is an extreme measure that is warranted only where there is strong reason to believe the jury needs protection.")

---

n.8.

[7]One news outlet noted that a reporter attempted to interview the jurors as they left the building on their final day. Mark Konkol, *Jury: 'We thought we did a very fair job'; Some members of panel use tunnel to avoid media*, Chicago Sun Times, September 28, 2007, at 11. The story notes that "[w]hen a reporter approached with questions one [male juror] put his arm around a female juror and raised his voice a bit. 'Just get away,' he said . . . ." *Id.* The story also says that "[t]wo female jurors walked away quickly, heading west toward the river, not saying a word to a trailing reporter." *Id.* The piece continues: "When no comment didn't stop the chase, one woman *relented* on the condition she wouldn't be identified." *Id.* (Emphasis added).

(internal quotation omitted). In cases like this one, however, the tool is an invaluable part of a judge's effort to seat impartial juries than can deliberate in a reasoned fashion. Granting the relief Tribune requests could threaten the viability of this tool on a going-forward basis. It is not difficult to imagine a future juror reacting incredulously—perhaps with good reason—to a judge's promise of anonymity if it becomes clear that it is merely a fleeting promise, revokable upon the conclusion of the trial. In order to ensure that judges are able to use anonymous juries to promote fairness, anonymity must not be illusory. It is essential that jurors have confidence in a judge's promise of anonymity.

In sum, I conclude that, due to the exceptional circumstances of this case, the interests of justice require me to keep the jurors' names confidential. Above all, I do so in order to protect the jurors' safety. In addition, intense media scrutiny could impose other, non-physical harms on these jurors. Third, the public had very broad access to these proceedings, and I do not believe that this ruling curtails that in any meaningful way. Lastly, I am satisfied with the sufficiency of the efforts that were undertaken to facilitate interaction between the media and any willing jurors. For the aforementioned reasons, Tribune's motion for access to jurors' names is DENIED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: October 4, 2007

9