UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 02 CR 1050 - 2, 3, 4, 7, 10 |
| JAMES MARCELLO, JOSEPH LOMBARDO, FRANK CALABRESE, SR. PAUL SCHIRO, and ANTHONY DOYLE, | Judge James B. Zagel |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

The Government has moved for the imposition of restitution, pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A (2000), against Defendants Frank Calabrese, Sr., James Marcello, Joseph Lombardo, Paul Shiro, and Anthony Doyle. The Government's revised restitution calculations, which account for the lost earning capacity of fourteen of the murder victims, indicate a total amount of $7,450,686.67.[1]

Restitution in this case is mandatory under the MVRA. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(I) ("the court shall order . . . that the defendant make restitution to the victim of the offense" for "a crime of violence"). Under the MVRA:

> [T]he term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

---

[1] The previous restitution total, based on unrevised data, was $3,900,166.30.

§ 3663A(a)(2). If, as here, the victims of crimes of violence are deceased, restitution must be ordered to the victims' estates. § 3663A(a)(1). In the case of an offense resulting in bodily injury to a victim, the MVRA provides for restitution to "the victim for income lost by such victim as a result of the offense," which amount shall represent "the full amount of each victim's losses . . . without consideration of the economic circumstances of the defendant." § 3663A(b)(2)(C); § 3664(f)(1)(A).

The Government's restitution figures include the lost earning capacity for fourteen individuals, whose murders were among the those included in the charged conspiracy in this case. Defendants Calabrese, Sr. and Marcello contend that the MVRA does not allow for the lost future income of a murder victim to enter into the restitution calculation. They rely on (1) Section 3663A(b)(3) of the MVRA, which provides: "in the case of an offense resulting in bodily injury that results in the death of the victim" the order of restitution shall require defendant to "pay an amount equal to the cost of necessary funeral and related services"; and (2) *United States v. Fountain*, 768 F.2d 790, 802 (7th Cir. 1985) (holding "that an order requiring a calculation of lost future earnings unduly complicates the sentencing process and hence is not authorized by the Victim and Witness Protection Act-unless, to repeat a vital qualification, the amount is uncontested, so that no calculation is required.").

First, *Fountain* construed a different statute, the Victim and Witness Protect Act, than the statute in issue here. The VWPA specifically authorized the district court to decline to order restitution if "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution . . . outweighs the need to provide restitution." 18 U.S.C. § 3579(d), *recodified as* 18 U.S.C. § 3663(a)(1)(b)(ii). The Court of Appeals explicitly relied on

2

this provision in reaching its decision in *Fountain.* 768 F.2d at 802. The post-*Fountain* MVRA, however, made the "complexity exception" inapplicable to crimes of violence; indeed the exception only currently applies to offenses against property, offenses violating the Controlled Substance Act, and offenses committed by fraud or deceit. 18 U.S.C. § 3663A(c)(3)(B); *United States v. Cienfuegos*, 462 F.3d 1160, 1168 (9th Cir. 2006).

Second, subsequent cases interpreting the language of the MVRA have consistently imposed restitution for the lost income of murder victims. *United States v. Douglas*, 525 F.3d 225, 253 (2d Cir. 2008); *United States v. Serawop*, 505 F.3d 1112, 1122, 1125 (10th Cir. 2007); *Cienfuegos*, 462 F.3d at 1164; *United States v. Oslund*, 453 F.3d 1048, 1063 (8th Cir. 2006); *United States v. Checora*, 175 F.3d 782 (10th Cir. 1999); *United States v. Lee*, 108 F.3d 1370 (2d Cir. 1997); *United States v. Roach*, No. 2:06CR4, 2008 WL 163569, at *4 (W.D.N.C. Jan. 16, 2008). The reasoning set forth by the Ninth Circuit in *Cienfuegos* is particularly persuasive:

> It would be illogical to assume that the ultimate death of a person who suffered bodily injury eliminates restitution for lost income. To not award restitution for future lost income would lead to a perverse result where murderers would be liable for markedly less in restitution than criminals who merely assault and injure their victims.

462 F.3d at 1164. In addition, "[r]eading the MVRA to exclude restitution for future lost income for homicide victims would conflict with Congress's stated intent to force offenders to 'pay full restitution to the identifiable victims of their crimes.'" *Id.* at 1165 (citing S.Rep. No. 104-179, at 12 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 924, 925. "Only by making restitution for future lost income can the perpetrator of a homicide fully pay the debt owed to the victim and to society." *Id.* (citing R. Posner, *Economic Analysis of Law* 176-81 (3d ed. 1986)).

Accordingly, the restitution in this case shall be equal to the amount of future income of the murder victims, based on reasonable assumptions concerning each victim's future earnings. *United States v. Roach*, No. 2:06CR4, 2008 WL 163569, at *9 (W.D.N.C. Jan. 16, 2008) (restitution awarded for lost income based on reasonable assumptions that murder victim would work 40 hours per week for 50 weeks per year until age 65 at state minimum wage and receive two percent increase per year).

Defendants next argue that they cannot be held liable to pay restitution to murder victims for whom the jury did not reach a verdict (*i.e.*, Henry Cosentino, Paul Haggerty, John Mendell, Vincent Moretti, Donald Renno, Nicholas D'Andrea, and Emil Vaci). Defendants are correct that a conviction is a condition precedent for a restitution judgment. 18 U.S.C. § 3663A(a)(1). But that does not mean that the restitution amount can only be based upon losses for which there was a conviction. The MVRA authorizes restitution for non-conviction losses and harms to victims that occurred in the course of a charged scheme or conspiracy. When, as here, the offense of conviction involves as an element a "scheme, conspiracy, or pattern of criminal activity," the restitution order may include acts of related conduct for which the defendant was not convicted. 18 U.S.C. § 3663A(a)(2) (a victim includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."); *United States v. Belk*, 435 F.3d 817, 819-20 (7th Cir. 2006) (upholding calculation of restitution based on total harm caused by defendant's criminal conduct as opposed to solely on the harm resulting from the eight mailings for which defendant was convicted); *United States v. Rand*, 403 F.3d 489, 493 (7th Cir. 2005) (holding restitution order could hold defendant responsible for acts of identity theft relating to victims not specifically identified in plea agreement so long as those victims

4

were directly harmed by defendant's criminal conduct in the course of the conspiracy). Accordingly, I will award restitution to each of the estates of the fourteen murder victims identified in the Government's motion.

In determining the amount of restitution, the Government bears the burden of proof by a preponderance of the evidence. 18 U.S.C. § 3664(e); *United States v. Sensmeier*, 361 F.3d 982, 988 (7th Cir. 2004). The Government engaged a Financial Forensic Expert and Certified Public Accountant to prepare a report calculating the estimated lost earning capacity of each of the murder victims for whom restitution is sought. I have carefully examined the report, as well as the adjusted report, with the restitution calculations. I conclude that the information contained therein provides sufficient and competent evidence from which to determine an appropriate amount of restitution in this case.[2] 18 U.S.C. §§ 3663, 3664. I adopt the Government's restitution figure, with one exception.

The report indicates that the determination of lost earning capacity for each individual was determined on the basis of lost wages (less payroll taxes) plus prejudgment interest, excluding consumption expenses, funeral expenses, household services, other lost income, indirect losses, consequential damages, punitive damages, and hedonic damages. At the Government's request, the calculation was based upon birth dates, death dates, estimated work

---

[2] Implicitly, therefore, I reject Defendant Calabrese, Sr.'s and Marcello's criticism of the report for its failure to conduct a victim-by-victim lifestyle analysis evaluating each victim's personal habits, such as smoking, drinking, drug abuse, diet, eating habits, and family medical history. I also do not credit objections on the basis that the report fails to consider that certain victims were criminals that would at some point have been convicted and sentenced, leaving "their prison earning capacity" at "pennies an hour." Restitution awards need only be a reasonable estimate of the victim's actual losses, *see United States v. Sapoznick*, 161 F.3d 1117, 1121-22 (7th Cir. 1998), and I am convinced that the figures provided here were determined upon the basis of reasonable assumptions about each victim's future earning capacity.

life expectancies, the prevailing minimum wage in Illinois or the last known wages of certain individuals, and prejudgment interest at the prime rate of interest.[3] The Government proposes that the income figure must include prejudgment interest through the date of sentencing "to make up for the loss of the funds' capacity to grow." Govt. Mot. for Imposition of Restitution, at 6 (citing *United States v. Shepard*, 269 F.3d 884, 886 (7th Cir. 2001).

     Prejudgment interest in this context is an amount of money awarded to account for the loss of use of money from the time it otherwise would have been paid until the time of payment as ordered by a court. In a case where money came from an interest-bearing account, as in *Shepard*, it makes sense to add prejudgment interest to the restitution amount because the funds had a real capacity to grow between the time they were taken and time of the order of restitution. The same reasoning does not, however, apply here, where the calculation of damages is premised upon the reasonable (even if conservative) assumption that nine out of the fourteen victims would have been employed at minimum wage and three of the fourteen would have earned annual net wages in the range of approximately $8,000 - $42,000. The highest earning capacity among the victims was calculated at about $54,000 - $113,000 in annual net wages over the course of the career of Michael Cagnoni. I refuse to include prejudgment interest on these restitution amounts for loss of future earnings because it is not reasonable to assume that any interest on these lost earnings has been foregone. This result is supported by both the language of the MVRA, which neither specifically allows nor forbids the imposition of prejudgment interest, and the purpose of the MVRA, which is to compensate victims for their actual losses.

---

[3] The original report included a prejudgment interest rate of 5.00%, the Federal Prime Rate as of September 23, 2008. The supplemental, adjusted report includes prejudgment interest at the rate of 3.25%, the Federal Prime Rate as of January 15, 2009.

Accordingly, I order restitution in the amount indicated by the Government's supplemental figures for "net wages" for each victim, for a total restitution amount of $4,422,572.89.

The Government argues that Defendants Calabrese, Sr., Marcello, Lombardo, Schiro, and Doyle should be jointly and severally liable for the amount of restitution to be paid to the deceased victims' estates. Indeed, "[c]o-conspirators generally are jointly and severally liable for injuries caused by the conspiracy, and this principle applies to the restitution context no less than to sentencing." *United States v. Rand*, 403 F.3d 489, 495 (7th Cir. 2005) (citing *United States v. Martin*, 195 F.3d 961, 968-69 (7th Cir. 1999)). However, when more than one defendant contributes to the loss of a victim, the MVRA permits me to "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h); *see also United States v. Walton*, 217 F.3d 443, 451 (7th Cir. 2000); *United States v. Trigg*, 119 F.3d 493, 501 (7th Cir. 1997).

I expressed at sentencing that, in my view, Doyle was not an active or full member of the conspiracy in the 1960s. There can be little doubt, however, that Doyle was a part of the conspiracy starting in February 1999, during the time Doyle assisted Calabrese, Sr. in collecting illegal street tax. The restitution sought here, pursuant to the MVRA, is for the future lost earnings of fourteen of the murder victims in this case. None of those murders occurred after February 1999, the latest date at which there is little doubt over Doyle's participation in the conspiracy. Accordingly, I apportion 1% of the total restitution amount to Doyle, or $44,225.73. As to the remaining $4,378,347.16, I hold Defendants Calabrese, Sr., Marcello, Lombardo, and Schiro jointly and severally liable.

Defendants also claim that since all of the murders occurred before the effective date of the MVRA (April 24, 1996) – and some of them occurred before the effective date of the VWPA (October 12, 1982) – a restitution judgment would violate the constitutional prohibition against the imposition of *ex post facto* laws. *See* U.S. Const. art. I, § 9, cl. 3. However, retroactive application of the MVRA at sentencing poses no *ex post facto* problem in this jurisdiction. *United States v. Dawson*, 250 F.3d 1048, 1051-52 (7th Cir. 2001); *United States v. Davuluri*, No. 02 C 50053, 2002 WL 1033097, at *1 (N.D. Ill. May 21, 2002).

Lastly, Defendants ask that I strike the 1962 transcripts that were attached as "Government Exhibit A" to the Government's motion for imposition of restitution. Because at sentencing I may consider information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy, I deny this request. *See United States v. Clark*, 538 F.3d 803, 812-13 (7th Cir. 2008).

ENTER:

_____
James B. Zagel
United States District Judge

DATE: April 6, 2009

8